IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UBEO BUSINESS SERVICES, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:18-CV-415-RP |
| DOCUMATION, INC., *formerly known as* DOCUMATION OF SAN ANTONIO, LEWIS BULLION, CORDRY RANEY, CHASE OUTEN, ZACHARY MAHAN, KIMBERLY BALL, DAVID JONES, and JASON DUVAL, | § § § § § § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court is Plaintiff UBEO, LLC's ("UBEO") Motion to Enforce Settlement Agreement. (Dkt. 105). Having considered the parties' briefs, the evidence, and the relevant law, the Court finds that the motion should be denied.

**I. BACKGROUND**

This case relates to the use of a trade name after the business divorce between UBEO and Defendant DOCUmation, Inc., formerly known as Documation of San Antonio ("DOCUmation"). UBEO sells, leases, and services office equipment and systems, such as copiers, printers, technical support services, and equipment maintenance. The individual defendants were members of UBEO's management and sales force who had geographic responsibility for UBEO's customer bases in North and East Texas. In April 2018, individual defendants begin leaving UBEO. UBEO learned that DOCUmation began holding itself out as "DOCUmation" in the North and East Texas copier markets, and UBEO claimed that name was widely known in the North and East Texas markets as the same trade name used by UBEO. UBEO filed its complaint on May 16, 2018 against DOCUmation and former UBEO employees. (Compl., Dkt. 1; Am. Compl., Dkt. 16). UBEO

alleges that in April and May of 2018, the individual defendants abruptly terminated their employment with UBEO and went to work for DOCUmation.

### A. The Settlement Agreement

After litigating in this Court, the parties agreed to mediate settlement discussions, which resulted in a settlement agreement (the "Agreement"). (*See* Stipulation of Dismissal, Dkt. 101). Specifically, the parties agreed to a geographic restriction on DOCUmation's use of the DOCUmation trade name in certain counties. Section 1 provides:

> Documation . . . and all those in privity or acting in concert with them, shall absolutely and in all respects immediately refrain for any reason or any purpose whatsoever, from using, directly or indirectly, the trade or service names "Documation", "DOCUHOU", and "DOCUDFW" or any name likely to cause confusion with "Documation", "DOCUHOU", or "DOCUDFW" . . . at locations in the following counties . . . .

(Agreement, Dkt. 105-1, at 6). The Agreement goes on to list approximately 64 counties in which DOCUmation is prohibited from using the "Documation" trade services name. (*Id.*). The name restriction remains in place until May 1, 2022. (*Id.*). The Agreement also permits a non-breaching party to take "all actions, legal and equitable" if a party breaches the terms or conditions of the Agreement, including immediate injunctive relief or damages. The Agreement also permits the prevailing party in any litigation resulting from such a breach to recover attorney fees and costs.

### B. Post-Settlement Background

After the parties agreed to settle, DOCUmation acquired a six-year-old software company, "DocumentWorx."[1] DocumentWorx began doing business in 2012 in the Dallas/Fort Worth area, and it operates in a number of counties restricted by the Agreement. DOCUmation's acquisition of DocumentWorx generated some degree of press.[2] For example, the San Antonio Business journal

---

[1] According to DOCUmation, it began to acquire DocumentWorx before mediating a settlement agreement with UBEO. (Resp. Mot. Enforce, Dkt. 110, at 5–6).

[2] UBEO attaches seven articles or press releases as examples. These articles essentially repeat the same set of facts: DOCUmation acquired DocumentWorx, DOCUmation changed the "DocumentWorx" name to "DocumentWorks,"

reported on October 31, 2018 that "San Antonio-based DOCUmation Inc. acquired a competitor in the Dallas-Fort Worth area with plans to expand across North and East Texas markets." (Mot. Enforce, Exh. B, Dkt. 105-2, at 2). DOCUmation's president is quoted as saying that the acquisition is a "great opportunity" for DOCUmation, and that he seeks to continue "the growth we've experienced in the software solutions side of the business while expanding our presence and major account opportunities in North and East Texas." (*Id.* at 4).

At the same time, DOCUmation began the process of complying with the terms of the Agreement. For example, DOCUmation began removing signage, changing e-mail addresses, re-tagging machines, re-wrapping service vehicles, and re-designing websites. (*See* Resp. Mot. Enforce, Dkt. 110, 4–5). Despite these efforts, some latent links between DocumentWorks and DOCUmation remained. Specifically, UBEO identifies six instances where users are redirected from DocumentWorks to DOCUmation directly:

1. The Company overview of DocumentWorks on Bloomberg.com contains a link that redirects the reader to DOCUmation's website.
2. DocumentWorks's and DOCUmation's websites provide the same telephone and service number.[3]
3. From DocumentWorks's homepage, www.documentworks.com, if a user requests a service call on the "Services & Supplies link, the user is directed to a page requesting information. If the user clicks on the "Sample Equipment ID Tag," the user is shown a sample DOCUmation equipment ID tag.
4. If a user instead clicks on the "Provide Meter Reading" link on DocumentWorks's site and clicks on the "Sample Equipment ID Tag," the user is again shown a sample DOCUmation equipment ID tag.
5. If the user clicks on the "Video Tutorials" link on DocumentWorks's site, the user is redirected to a 2:12 video on YouTube from DOCUmation.
6. If the user visits the Hurst-Euless-Bedford Chamber of Commerce website, www.heb.org, searches "DocumentWorks," and clicks on the "visit website" icon, the user is redirected to a DOCUmation website.

(*See* Mot. Enforce, Dkt. 105, 13–15). Each of these errors has since been corrected.

---

and DocumentWorks intends to operate in the DFW, Houston, and Austin markets. (*See* Mot. Enforce, Exhs. B–D, E–H, Dkts. 105-2, 105-3, 105-4, 105-5, 105-6, 105-7, 105–8).

[3] As a result, UBEO says that if a DocumentWorks customer calls to get service, an operator answers: "Documation." (Mot. Enforce, Dkt. 105, at 13). DOCUmation, however, says that an operator answers: "Hello, this is (insert name here), how may I assist you?" (Resp. Mot. Enforce, Dkt. 110, at 7).

On November 20, 2018, UBEO filed an opposed motion to enforce the Agreement, identifying each of the above as examples of how DOCUmation breached the agreement. Specifically, UBEO contends that the press coverage of DOCUmation's acquisition of DocumentWorx constitutes an indirect use of the DOCUmation name in areas restricted by the Agreement, and that DOCUmation intended to deceive the market by linking the DOCUmation name to its newly acquired subsidiary. As relief, UBEO requests that the Court enter an order: (1) finding that DOCUmation breached the Agreement; (2) enforcing the Agreement according to its terms and the intent of the parties, and (3) awarding UBEO damages resulting from DOCUmation's breach[4] plus attorney fees, costs, and other relief as the Court deems just.

## II. LEGAL STANDARD

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). Once entered, parties typically cannot repudiate the settlement agreement. *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967). Instead, settlement agreements, "are generally viewed as binding, final and as conclusive of the rights of the parties as is a judgment entered by the court." *Rodriguez v. VIA Metro. Transit Sys.*, 802 F.2d 126, 128 (5th Cir. 1986). Ultimately, "[t]he decision whether to grant a motion to enforce a settlement agreement is committed to the discretion of the district court." *Weaver v. World Fin. Corp. of Tex.*, No. 3:09-CV-1124-G, 2010 WL 1904562, at *2 (N.D. Tex. May 12, 2010) (citing *Deville v. U.S. Dep't of Veterans Affairs*, No. 06-30252, 2006 WL 2985918, at *1 (5th Cir. 2006)).

---

[4] UBEO does not allege any damages; it requests that "UBEO should be allowed to engage in limited discovery to attempt to quantify, to the extent possible, its damages stemming from Defendant's breach." (Mot. Enforce, Dkt. 105, at 23 n.7). The Court will not permit UBEO to aimlessly wander through the field of discovery in hopes that it would stumble upon damages without any indication that they even exist. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1396 (5th Cir. 1994).

A settlement agreement is a contract, subject to the applicable rules of contract construction and interpretation. *Alford v. Kuhlman Elec. Corp.*, 716 F.3d 909, 912 (5th Cir. 2013). The construction and enforcement of settlement agreements is governed by principles of state law applicable to contracts. *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987) (per curiam). When construing a written contract under Texas law, a court must "ascertain the true intentions of the parties as expressed in the writing itself." *Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015). To achieve this objective, courts should "examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011) (emphasis in original). The Court can consider "facts and circumstances surrounding a contract, including 'the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give context to the parties' transaction.'" *Kachina Pipeline*, 471 S.W.3d at 450. Absent ambiguity, the writing alone is deemed to express the parties' intent. *See In re El Paso Refinery, LP*, 171 F.3d 249, 257 (5th Cir.1999).

### III. DISCUSSION

Though styled as a motion to enforce, the only issue raised in UBEO's motion is whether DOCUmation breached the terms of the Agreement. Neither party disputes whether a valid agreement exists. Under these circumstances, an action to enforce a settlement agreement is analogous to an action for breach of contract. *See Alford*, 716 F.3d at 912. Under Texas law, a plaintiff alleging breach of contract must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763 (5th Cir. 2016) (quoting *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no writ)).

5

UBEO alleges that DOCUmation breached the Agreement by announcing through the press that it will be doing business in the prohibited counties through its subsidiary DocumentWorks. (Mot. Enforce, Dkt. 105, at 10–12). The Court disagrees. The Agreement prohibits DOCUmation from directly or indirectly using the trade or service names "Documation", "DOCUHOU", and "DOCUDFW" in the listed Texas counties. Nothing in the Agreement prohibits DOCUmation from acquiring a subsidiary in those counties. Nor does the Agreement control how third parties report on DOCUmation's business activity. UBEO has not presented any evidence that DOCUmation intentionally sought to use the trade name "Documation" in any prohibited area through its media presence, or that DOCUmation could control how the media chose to report DOCUmation's acquisition. DOCUmation acquired a subsidiary, and media sources reported on that acquisition independently. This falls drastically short of breaching the Agreement.

UBEO also alleges that DOCUmation breached the Agreement by linking the two companies through various web links or contact information. *See supra* 3–4. Each of these alleged errors has been corrected since UBEO filed its motion to enforce. (*See* Resp. Mot. Enforce, Dkt. 110, at 6–7). Based on how quickly these errors were corrected, it is apparent that UBEO did not first seek to conference with DOCUmation in good faith to correct these errors before filing this motion as required by Rule 26(c)(1).[5] Further, UBEO has not alleged any damages it suffered as a result of these errors. The Court thus finds that any relief sought by UBEO is wholly unnecessary.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that UBEO's Motion to Enforce, (Dkt. 105), is **DENIED**.

---

[5] Consistent with the Federal Rules of Civil Procedure and this Court's Local Rules, a movant is required to certify that they have conferenced with opposing counsel in good faith. Fed. R. Civ. P. 26(c)(1); W.D. Tex. Loc. R. CV-7(i). Counsel has certified here. (Mot. Enforce, Dkt. 105, at 25). It is apparent, however, that UBEO's counsel made no effort to conduct a meaningful conference on all contested matters. (*See* Resp. Mot. Enforce, Dkt. 110, at 1, 6–7; Gallia E-mail, Dkt. 110-1, at 3). If the Court continues to receive motions that contain inaccurate certification, or otherwise fail to comply with Federal and Local Rules, it will consider whether sanctions are appropriate. *See* Fed. R. Civ. P. 11(c).

The Agreement also provides that in an action for injunctive relief or damages as a result of an alleged breach of the agreement, "[t]he prevailing party in any litigation resulting from such a breach shall be entitled to recover its/his/her attorneys' fees and costs incurred as a result of a breach of this Agreement and all other amounts that it/he/she may be entitled to under Texas law." (Agreement, Dkt. 105-1). As the prevailing party, Defendants may recover their attorney fees associated with defending UBEO's Motion to Enforce. Accordingly, **IT IS ORDERED** that Defendants submit a motion for attorney fees and costs on or before **January 21, 2019.**

**SIGNED** on January 14, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE